UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUSTIN COSME,<br>    Plaintiff,<br><br>v.<br><br>FAUCHER, et al.,<br>    Defendants. | CASE NO. 3:21-cv-1341 (MPS)<br><br><br><br><br>NOVEMBER 3, 2021 |

**ORDER**

Plaintiff Justin Cosme, incarcerated at Brooklyn Correctional Institution in Brooklyn, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names five defendants: Warden Faucher, Captain Jane Doe, Captain John Doe, Commissioner Cook, and Deputy Warden Blanchard. The plaintiff contends that the defendants violated his rights under the First,[1] Fourth, Eighth, and Fourteenth Amendments. He describes his claims as "deliberate indifference, with a callous disregard for human life and health and safety, failure to protect, and unconstitutional conditions of confinement, cruel and unusual punishment, etc." ECF No. 1 at 1. The plaintiff seeks damages as well as injunctive relief in the form of an order waiving costs of incarceration, from the defendants in their individual and official capacities.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be

---

[1] In his complaint, the plaintiff refers to the Fourth, Eighth, and Fourteenth Amendments and the "First Amendo." The court assumes he refers to the First Amendment.

granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis.*

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.  Allegations

The plaintiff alleges that, in June 2020, the defendants were aware of the dangerousness of the COVID-19 virus but failed to screen inmates and staff at Brooklyn Correctional Institution ("Brooklyn") to mitigate spread of the virus. ECF No. 1 ¶ 7. During February and March 2020, correctional staff who were "mildly sick" or who tested positive but were asymptomatic were permitted to work in the inmate housing units at Brooklyn. *Id.* ¶ 9. Also, newly arriving inmates

were not adequately screened for COVID-19 during this period. *Id.* Although correctional officers were testing positive for the virus in March 2020, the inmate population was not tested and inmates who had contact with infected staff were not quarantined. *Id.* ¶ 10.

In February 2020, the plaintiff complained to Warden Faucher, Deputy Warden Blanchard, and the Captains Doe about sick inmates and staff in his housing unit. *Id.* ¶ 11. In February and March 2020, the plaintiff repeatedly asked these four defendants for cleaning supplies and a mask. *Id.* In response, the plaintiff was told not to worry because COVID-19 was "only a 'common cold.'" *Id.* ¶ 12. Correctional officers with mild cases of the virus would come to work not caring that they could spread COVID-19 to other staff or inmates. *Id.*

The plaintiff was housed in A-dorm at Brooklyn. *Id.* ¶ 13. In March-April 2020, inmates in A-dorm were very sick with COVID-19. *Id.* ¶ 14. When some inmates reported their symptoms to medical staff, or to correctional staff when seeking a pass to the medical unit, they were laughed at, denied a pass, or threatened to be moved to Northern Correctional Institution. *Id.* Many inmates in the dorm were coughing, sneezing, and choking. *Id.* Inmates who "passed out" were removed from the housing unit and brought to the gym. *Id.*

The defendants did not, however, send anyone to disinfect the sleeping areas of those inmates. *Id.* ¶ 15. In March 2020, Warden Faucher ordered all cleaning supplies to be removed from A-dorm. *Id.*

In April to May 2020, the plaintiff complained to Warden Faucher and Deputy Warden Blanchard about the lack of quarantine. *Id.* ¶ 16. Inmates who tested positive but were asymptomatic were permitted to remain in the dorm as long as they showed no symptoms. *Id.* In addition, the plaintiff alleges that inmates were afraid of reporting symptoms because they did

3

not want to be transferred.  *Id.*

Warden Faucher, Deputy Warden Blanchard, and the Captains Doe did not follow guidelines from the Centers for Disease Control ("CDC"), or the governor's mask mandate.  *Id.* ¶ 17.  The plaintiff alleges that Commissioner Cook failed to enforce the mask mandate.  *Id.*

The inmates were denied adequate cleaning supplies.  *Id.* ¶ 18.  The plaintiff used his t-shirt to wipe down the restroom before using it.  *Id.*  At times, he was denied toilet paper.  *Id.*  The plaintiff used his towel or t-shirt as a mask because masks were not given to the inmates.  *Id.*

The defendants ignored the plaintiff's complaints and grievances.  *Id.* ¶ 19.  In June 2020, the facility conducted a mass testing for COVID-19.  *Id.*  The plaintiff tested positive.  *Id.* ¶¶ 19-20.  He experienced hearing loss, severe migraines, lack of taste and smell, loss of sleep, anxiety, and depression.  *Id.*

After testing positive, the plaintiff was moved to the gym for quarantine for three days.  *Id.*  The plaintiff "lived on the floor," was denied showers, clean water to bathe, clean clothes and bedding, toilet paper, and hygiene products.  *Id.* ¶ 21.  There were approximately fifty inmates in the gym.  *Id.*

II.  Analysis

The plaintiff presents his claims in four counts: (1) the defendants subjected the plaintiff to unconstitutional conditions of confinement by denying him clothing, cleaning supplies, showers, and hygiene products and deliberately exposing inmates to COVID-19; (2) the defendants were deliberately indifferent to the plaintiff's health and safety by deliberately exposing him to COVID-19 and ignoring guidelines and executive orders for prisons; (3) the defendants failed to protect the plaintiff from exposure to COVID-19 by failing to adequately

4

screen correctional staff and newly-arrived inmates and failing to institute measures to mitigate spread of the virus; and (4) the defendants subjected the plaintiff to cruel and unusual punishment in violation of the Eighth Amendment by forcing him to live on the floor in the gym for three days.

### A. First, Fourth, and Fourteenth Amendment Claims

The plaintiff states that he asserts claims for violation of his rights under the First, Fourth, Eighth, and Fourteenth Amendments. Records available on the Department of Correction website show that the plaintiff is a sentenced inmate. *See* ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=404562 (the plaintiff was sentenced on September 14, 2018). He asserts claims for unconstitutional conditions of confinement and deliberate indifference to health and safety. As a sentenced inmate, the plaintiff's claims are cognizable under the Eighth Amendment, not the Fourth or Fourteenth Amendments. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are considered under the Eighth Amendment while claims of pretrial detainees are considered under the Fourteenth Amendment); *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989) (applying Fourth Amendment to period prior to arraignment while inmate is in police custody).

In addition, the plaintiff alleges no facts implicating any First Amendment rights.[2] For example, he does not allege that he was punished for speaking against the facility's preparedness

---

[2] The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

for the virus or that any defendant retaliated against him for complaining about failure to follow COVID-19 protocol. Thus, there is no basis for a First Amendment claim.

The First, Fourth, and Fourteenth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The court considers the plaintiff's claims below under the Eighth Amendment.

### B. Conditions of Confinement

The plaintiff's first and fourth counts concern conditions of confinement. His allegations in the first count concern the denial of cleaning supplies and exposure to COVID-19 in A-dorm and the fourth count concerns the three days of quarantine in the gym.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, the plaintiff must allege facts supporting an objective element—that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities"—and a subjective element—that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)). To satisfy the subjective component, the plaintiff must allege that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185096 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and ... dr[ew] that inference").

Under the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d

6

427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The court makes this determination in light of the steps the facility has already taken to mitigate the danger. *Id.*

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020) (citing cases).

The plaintiff alleges that, in February and March 2020, he complained to Warden Faucher, Deputy Warden Blanchard, and the Captains Doe about sick inmates and staff in his housing unit and repeatedly requested cleaning supplies and a mask. He further alleges that no steps were being taken to quarantine infected staff or inmates. The court considers these allegations sufficient at the initial review stages to satisfy the objective component of the test. In addition, the plaintiff alleges that he complained to Warden Faucher, Deputy Warden Blanchard, and the Captains Doe about the issues but nothing was done. This allegation is sufficient to show that they were aware of facts from which the inference that the plaintiff faced a substantial risk of serious harm could be drawn and that they ignored that risk. The conditions of confinement claim will proceed against Warden Faucher, Deputy Warden Blanchard, and the Captains Doe regarding the conditions in A-dorm.

The plaintiff also alleges that he was subject to harsh conditions when he was quarantined in the gym for three days; he was required to sleep on the floor and was denied showers, clean water to bathe, clean clothes and bedding, toilet paper, and hygiene products.

"The failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation." *Walker*, 717 F.3d at 127. The Second Circuit focuses, in particular, on the deprivation of toilet paper. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (noting "this court and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement" ) (citing cases); *see also Townsend v. Sweet*, No. 3;19-cv-580(SRU), 2019 WL 4139469, at *7 (D. Conn. Aug. 30, 2019) (permitting Eighth Amendment conditions claim based on denial of hygiene items and clean clothing for several days to proceed on initial review); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The failure to regularly provide prisoners with … toilet articles including soap, razors, combs, toothpaste, [and] toilet paper … constitutes a denial of personal hygiene and sanitary living conditions."); *but see Conley v. Aldi*, No. 3:18-cv-824(VAB), 2020 WL 1333501, at *5 (D. Conn. Mar. 23, 2020) (holding that inability to "practice" personal hygiene for a three-day period and a four-day period failed to state Eighth Amendment violation and noting that occasional or temporary denials of hygiene items does not constitute deprivation of basis human need).

Here, the conditions in the gym combine to implicate the right to sanitary living conditions. As the plaintiff alleges that he was denied many items necessary for sanitary housing, including toilet paper, for three days, the court will permit the claim to proceed for further development of the record. The plaintiff does not allege that any defendant was

8

responsible for the conditions in the gym. However, as the gym was the quarantine location at Brooklyn, the court will assume, for purposes of initial review only, that Warden Faucher and Deputy Warden Blanchard were aware of the conditions there. *See Scozzari v. Santiago*, No. 3:19-cv-229(JAM), 2019 WL 1921858, at *5 (D. Conn. Apr. 29, 2019) (permitting conditions of confinement claim to proceed against warden because conditions were result of facility policies of which warden would be aware). As there is no connection between the Captains Doe and the gym, this claim as is dismissed as to the Captains Doe.

### C.  Deliberate Indifference to Health

The plaintiff's remaining two claims, entitled claims for deliberate indifference to health and failure to protect, relate to the alleged failure of the defendants to take measures and follow recommended guidelines to address the spread of COVID-19 in the prison. The standard set forth above for the conditions of confinement claims also applies to these claims. *See Toussaint v. Guadarama*, No. 3:21-cv-32(MPS), 2021 WL 1648648, at *4–5 (D. Conn. Apr. 27, 2021) (applying same standard to claims for unconstitutional conditions of confinement, failure to protect, and deliberate indifference relating to correctional response to COVID-19).

The plaintiff alleges that the defendants ignored or failed to comply with executive orders from the governor and recommendations from the CDC to prevent the spread of COVID-19 in the state prisons, thereby failing to protect him from contracting COVID-19 and prevent the spread of the virus within A-dorm. The plaintiff has sufficiently alleged that the defendants were aware of the potentially harmful nature of COVID-19 but minimized its danger to inmates and failed to enforce the mask mandate and implement screening procedures for newly-arriving inmates and quarantine procedures for inmates and staff who tested positive but were

9

asymptomatic. These allegations are sufficient, for purposes of initial review, to plausibly state that the defendants were aware of the potentially harmful nature of COVID-19 but disregarded the risk to inmate heath by taking reasonable measures to address those risks. The claims for deliberate indifference to health will proceed against defendants Faucher, Blanchard, and Captains Doe.

### D. Commissioner Cook

The plaintiff names Commissioner Cook as a defendant and alleges in conclusory fashion that Commissioner Cook failed to enforce the mask mandate.

The Second Circuit has recently clarified the standard to be applied to a claim of supervisory liability. *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Thus, to support his claim against Commissioner Cook, the plaintiff must plead facts showing that Commissioner Cook knew that the mask mandate was not being enforced at Brooklyn. He has not done so. The plaintiff merely argues that Commissioner Cook should have ensured the mandate was being enforced. As the plaintiff has not alleged facts showing that Commissioner Cook personally knew of and disregarded an excessive risk to the plaintiff's health, he fails to state a cognizable claim against Commissioner Cook. The claim against Commissioner Cook is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### E. Official Capacity Claims for Damages

The plaintiff names the defendants in their individual and official capacities. To the extent that he seeks damages from the defendants in their official capacities, the claim is dismissed. The Eleventh Amendment prohibits an award of money damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and the plaintiff alleges no facts suggesting that the state has waived immunity in this case. Thus, any claims for damages from the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

III.    Conclusion

The request for damages against the defendants in their official capacities is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All claims against Commissioner Cook, any First, Fourth, and Fourteenth Amendment claims, and the conditions of confinement claim regarding the quarantine in the gym as to defendants Captains Doe are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The case will proceed on the conditions of confinement claim regarding A-dorm against defendants Faucher, Blanchard, and Captains Doe, the conditions of confinement claim regarding the gym against defendants Faucher and Blanchard, and the deliberate indifference to health claims against defendants Faucher, Blanchard, and Captains Doe in their individual capacities only.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for defendants Warden Faucher and Deputy Warden Blanchard with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)     T**he Clerk shall** send the plaintiff a copy of this Order, instructions on effecting service, notice of lawsuit forms and waiver of service of summons forms.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests should not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

(11) Service cannot be effected on defendants Captains John and Jane Doe without their names and current work addresses. The plaintiff is directed to ascertain this information promptly through the discovery process and file a notice containing the information. Once the plaintiff identifies these two defendants, the court will order service.

**SO ORDERED** this 3rd day of November 2021 at Hartford, Connecticut.

                                       /s/
                                       Michael P. Shea
                                       United States District Judge