# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JUSTIN COSME, | : | |
| *Plaintiff,* | : | Civil No. 3:21-cv-1341 (SVN) |
| | : | |
| v. | : | |
| | : | |
| FAUCHER et al., | : | October 28, 2022 |
| *Defendants.* | : | |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Justin Cosme filed a four-count complaint *pro se* pursuant to 42 U.S.C. § 1983 asserting claims for unconstitutional conditions of confinement and deliberate indifference to health and safety related to conditions at Brooklyn Correctional Institution during the COVID-19 pandemic. Following initial review and the ruling on Defendants' partial motion to dismiss, three claims remain: a conditions of confinement claim regarding Defendants' alleged failure to provide Plaintiff with sanitary living conditions (Count 1) and two deliberate indifference to health claims, for Defendants' alleged failures to protect Plaintiff from COVID-19 and to screen correctional staff and inmates for COVID-19 (Counts 2 and 3, respectively). The remaining defendants are Warden Faucher and Deputy Warden Blanchard.

Defendants move for summary judgment on three grounds: (1) Plaintiff failed to exhaust his administrative remedies on the three remaining claims before he commenced this action; (2) Plaintiff fails to establish cognizable claims for relief; and (3) Defendants are protected by qualified immunity. Although Defendants informed Plaintiff of his obligation to respond to their motion,[1] and although the Court *sua sponte* extended Plaintiff's time to file a response, he did not

---

[1] Defendants have clarified that they mailed the Notice to Pro Se Litigant, ECF No. 28-3, to Plaintiff, in addition to e-filing it. *See* ECF No. 31.

respond to Defendants' motion.  *See* ECF Nos. 28-3, 29.

For the reasons explained below, because Plaintiff failed to exhaust his administrative remedies before bringing his suit, Defendants' motion is granted.

## I.      FACTUAL BACKGROUND

The following facts are taken from Defendants' Local Rule 56(a)1 Statement and supporting exhibits.  As Plaintiff has not opposed Defendants' summary judgment motion, and has not submitted a statement pursuant to Local Rule 56(a)2, the Court will deem the facts set forth in Defendants' Local Rule 56(a)1 Statement admitted where they are supported by evidence.  *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for the purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").  Because the Court determines that summary judgment should be granted based on Plaintiff's failure to exhaust administrative remedies, only those facts relating to this issue are included herein.

Plaintiff was housed at Brooklyn Correctional Institution ("Brooklyn CI") from January 1, 2020, until October 12, 2021.  Defs.' Local Rule 56(a)1 Statement, ECF No. 28-2, ¶ 2.  Defendants Faucher and Blanchard were the Warden and Deputy Warden, respectively, at Brooklyn CI during the time period relevant to Plaintiff's claims.  *Id.* ¶ 3.  Plaintiff tested positive for COVID-19 on June 10, 2020.  *Id.* ¶ 24.  At no time while he was confined at Brooklyn CI did Plaintiff file a grievance or grievance appeal.  *Id.* ¶ 4.

## II.        LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

It is the moving party's burden to show there are no disputed material facts.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by pointing out an absence of evidence to support the non-moving party's case.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  If the moving party demonstrates there are no disputed issues of material fact, the burden shifts to the non-moving party to rebut this showing through introduction of "specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  When examining the record, "[t]he court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Although the court is required to read a self-represented party's papers "liberally" and interpret them "to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

3

### III.    DISCUSSION

Because Plaintiff has failed to exhaust his administrative remedies, Defendants' motion is granted.

#### A.    Prison Litigation Reform Act Exhaustion Requirements

Pursuant to the Prison Litigation Reform Act, all inmates are required to exhaust administrative remedies before filing a federal lawsuit related to prison conditions.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court.  *See Woodford v. Ngo*, 548 U.S. 81, 90–91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits)" and "demands compliance with an agency's deadlines and other critical procedural rules").  An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable; "special circumstances" cannot relieve an inmate of his or her obligation to adhere to the exhaustion requirement.  *See Ross v. Blake*, 578 U.S. 632, 642 (2016).

#### B.    Connecticut Department of Correction Administrative Remedies

The administrative remedies for the State of Connecticut Department of Correction are set

forth in Administrative Directive ("A.D.") 9.6.  *See* Ex. C to Defs.' Mot., Decl. of Administrative

Remedy Coordinator ("ARC") Collins, ECF No. 28-6, attach. 1, A.D. 9.6, Inmate Administrative

Remedies (revised Aug. 15, 2013).  Claims related to conditions of confinement and deliberate

indifference to health by correctional staff are subject to the inmate grievance procedure set forth

in A.D. 9.6(6).  *See Silva v. Kilham*, No. 3:19-CV-01719 (VLB), 2020 WL 7388960, at *5 (D.

Conn. Dec. 16, 2020).

Under the procedures in place during the timeframe relevant to Plaintiff's claim,[2] an inmate

was required to first attempt to resolve the matter informally.  Specifically, he or she could attempt

to verbally resolve the issue with an appropriate staff member or supervisor.  *See id.* § 9.6(6)(A).

If attempts to resolve the matter verbally were not effective, the inmate was required to make a

written attempt by sending a specific form to the appropriate staff member.  *See id.*  The written

form needed to "clearly state the problem and the action requested to remedy the issue."  *Id.*

Pursuant to the Directive, the correctional staff were required to respond to a written form within

fifteen business days of receipt.  *Id.*

If an inmate was not satisfied with the response to his request, he could file a Level 1

grievance.  *See id.* § 9.6(6)(C).  The Level 1 grievance needed to be filed within thirty calendar

days from the date of the occurrence or discovery of the cause of the grievance, and inmates were

directed to include with the grievance a copy of the response to the inmate's written request to

resolve the matter informally or an explanation for why the response was not attached.  *See id.*

The Unit Administrator was required to respond in writing to the Level 1 grievance within thirty

---

[2] A revised version of A.D. 9.6 became effective on April 30, 2021.  A.D. 9.6, Inmate Administrative Remedies (revised Apr. 30, 2021), https://portal.ct.gov/DOC/AD/AD-Chapter-9.  Defendants have submitted, as an attachment to their motion, the version of A.D. 9.6 that was in effect in 2020, which is the relevant timeframe with respect to Plaintiff's claims.  *See* Ex. C to Defs.' Mot., Decl. of ARC Collins, ECF No. 28-6, attach. 1, A.D. 9.6, Inmate Administrative Remedies (revised Aug. 15, 2013).  Though the Court refers to the version of A.D. 9.6 that was in effect in 2020, most of the requirements discussed herein were not materially altered by the 2021 revisions to the Directive.

business days of his or her receipt of the grievance. *See id.* § 9.6(6)(I). The grievance could be returned without disposition, rejected, denied, compromised, upheld, or withdrawn. *See id.* §§ 9.6(6)(D) & (E).

The procedures further provided that the inmate could appeal the Unit Administrator's disposition of the Level 1 grievance, or the Unit Administrator's failure to dispose of the grievance in a timely manner, through a Level 2 grievance. *See id.* §§ 9.6(6)(G), (I), (K). An inmate seeking to appeal a Level 1 grievance was required to file the Level 2 appeal within five calendar days of the inmate's receipt of the decision on the Level 1 grievance. *See id.* § 9.6(K). An inmate seeking to appeal the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner was required to do so within sixty-five days of the date the Level 1 grievance was filed by the inmate. *See id.* § 9.6(M). Level 2 appeals of inmates confined in Connecticut correctional facilities were reviewed by the appropriate District Administrator. *See id.* § 9.6(6)(K). The District Administrator was required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals were restricted to challenges to department policy, challenges to the integrity of the grievance procedure, and Level 2 appeals to which there had been no timely response by the District Administrator. *See id.* § 9.6(6)(L). A Level 3 appeal was required to be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner needed to be filed within thirty-five calendar days of the filing of the Level 2 appeal. *See id.* § 9.6(6)(M). Level 3 appeals were reviewed by the Commissioner of the Department of Correction or his or her designee. *See id.* § 9.6(6)(L).

C.  <u>Plaintiff's Failure to Exhaust Administrative Remedies</u>

Plaintiff does not provide a specific timeframe for the claims raised in his complaint.  As he alleges that Defendants' actions caused him to contract COVID-19, however, the Court assumes that his claims are based on the period prior to June 10, 2020, the date he tested positive for COVID-19.  As Administrative Directive 9.6 required that any grievance be filed no later than thirty days after the date of the occurrence or discovery of the cause for the grievance, Plaintiff should have filed any grievance relating to his claims in this case no later than July 10, 2020, thirty days after he tested positive for COVID-19.

In support of their motion for summary judgment, Defendants have submitted the declaration of ARC Collins.  As part of his duties, ARC Collins maintains the grievance log, a record of all grievances and grievance appeals filed by inmates at Brooklyn.  *See* ECF No. 28-6 ¶ 3.  ARC Collins declares that Plaintiff filed no grievances from January 1, 2020, to October 12, 2021.  *Id.* ¶ 9.  ARC Collins attaches to his declaration a copy of the grievance log for the years 2019 through 2021.  *See id.* attach. 2 at 19–47, Brooklyn CI Grievance Log.  The log supports his statement that Plaintiff filed no grievances during this period.  Plaintiff has presented no evidence in opposition to Defendants' motion showing that he exhausted his administrative remedies.

Accordingly, Defendants' motion for summary judgment is granted on the ground that Plaintiff failed to exhaust administrative remedies before commencing this action.  Given this holding, the Court need not reach Defendants' other arguments in support of summary judgment.

## IV.   CONCLUSION

Defendants' motion for summary judgment, **ECF No. 28**, is **GRANTED**.  The Clerk is

directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** this 28th day of October, 2022, at Hartford, Connecticut.


 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE